**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI CIVIL DIVISION**

DEMIS J. ESPINOZA, on his own
behalf and on behalf of all similarly
situated individuals,

      Plaintiff,

v.                                Case No.:

CRIMCHECK HOLDINGS, LLC

      Defendant.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Demis Espinoza, on behalf of himself and the putative class set forth below, brings the following Class Action Complaint against Defendant, Crimcheck, LLC ("Defendant"), including its related entities, subsidiaries, predecessors and successors, under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. §§ 1681a–x.

## PRELIMINARY STATEMENT

1.    Defendant, Crimcheck is a consumer reporting agency ("CRA"), providing employers with consumer reports, commonly referred to as "background checks," for employment purposes. Employers rely on these reports to make employment related decisions on applicants and employees.

2.    Accessing employment-purpose background checks by anyone is presumptively illegal under the FCRA. To access and use background checks, employers must abide by strict disclosure and notice requirements imposed by the statute, and must—before they may obtain a report in the first place—certify to the CRA that they have (as to disclosure) and will (regarding notice) abide by these requirements. *See* 15 U.S.C. §§ 1681b(b)(2), (3).

3.      The FCRA also makes it presumptively illegal for a CRA like Crimcheck to issue a report in the employment context.  A CRA may issue such a report "only if" it first obtains from the entity and person to whom it plans to issue the report, the certification described in the preceding paragraph.

4.      These requirements must be met as to each report a CRA issues—blanket or prospective certifications by the users of reports are not permitted.

5.      The failure to meet these certification rules means the CRA is forbidden from issuing reports in the employment context.  If the CRA issues a report without the certifications, it violates the law with each report is so issues.

6.      Peoplease, LLC d/b/a Peoplease ("Peoplease") is a professional employer organization ("PEO") providing employee staffing and leasing services.  Peoplease leases employees to their employer clients, providing an array of administrative services and insurance coverages.  However, Peoplease's clients make their own hiring and firing decisions.  Upon information and belief, Peoplease does not make the hiring and firing decisions for its clients.

7.      Managed Labor Solutions, LLC ("MLS") is an employer.  MLS used Peoplease's services, *i.e.* was an employer-client of Peoplease.

8.      Crimcheck had a business relationship with Peoplease wherein Crimcheck furnished consumer reports to Peoplease's clients, *i.e.* employers, which the employers used for employment purposes.

9.      Crimcheck had similar relationships with other PEOs wherein Crimcheck furnished consumer reports for employment purposes to PEOs' clients.

10.     The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose.  Such use becomes lawful if and only if,

the consumer reporting agency and user of the consumer report have complied with the statute's strict certification, disclosure, authorization and notice requirements. 15 U.S.C. § 1681b(a).

11.     The FCRA, makes it presumpively unlawful for a consumer reporting agency to furnish a consumer report that is not in accordance with the written instructions of the consumer to whom it relates.

12.     Crimcheck willfully violated these requirements, in systematic violation of Plaintiff's rights and the rights of other putative class members.

13.     Crimcheck violated 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) by providing consumer reports used for employment purposes without certification from Peoplease's clients that they would abide by the FCRA's disclosure, authorization and notice requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

14.     Crimcheck violated 15 U.S.C. § 1681b(a)(2) by furnishing consumer reports in direct contravention of the written instructions of the consumer to whom the report related.

15.     Based on the foregoing violations, Plaintiff asserts FCRA claims against Crimcheck on behalf of himself and a class consisting of consumers whose consumer reports were furnished by Crimcheck without certification that the user would comply with the FCRA's strict disclosure, authorization and notice requirements.

16.     Based on the foregoing violations, Plaintiff asserts FCRA claims against Crimcheck on behalf of himself and a class consisting of consumers whose consumer reports were furnished by Crimcheck not in accordance with the written instructions of the consumer to whom the report related. 15 U.S.C. § 1681b(a)(2).

17.     In Count I, Plaintiff asserts a FCRA claim against Crimcheck under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) on behalf of a "Certification Class" consisting of:

3

**All employees and job applicants in the United States who were the subject of a consumer report furnished by Crimcheck that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

13.     In Count II, Plaintiff asserts a FCRA claim against Crimcheck on behalf of a "§ 1681b(A)(2) Class" consisting of:

**All employees and job applicants in the United States who were the subject of a consumer report furnished by Crimcheck that was not provided in accordance with the employee's or applicant's written insructions within five years of the filing of this complaint through the date of final judgment in this action.**

14.     On behalf of himself and the putative classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

15.     Individual and class representative, Plaintiff, Demis Espinoza ("Plaintiff") is a member of the putative classes defined below.

16.     Crimcheck is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and provides consumer reports for employment purposes.

## JURISDICTION AND VENUE

17.     This is an action for statutory damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq*.

18.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

19.     Venue is proper in this Court because Plaintiff is a resident of Miami, Florida, worked in Florida, and the underlying events giving rise to Plaintiff's claims occurred in Miami, Florida.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

20.     Congress has recognized consumer reporting agencies like Crimcheck have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

21.     In accordance with Congress' findings, a consumer reporting agency may only furnish a consumer report for employment purposes if the *user* has certified its compliance with 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) before the report is furnished and certifies future compliance with 15 U.S.C. § 1681b(b)(3), if applicable. 15 U.S.C. §§ 1681b(b)(1)(A)(i)–(ii).

22.     The certification requirement reads, in pertinent part:

> (1) **Certification from user** A consumer reporting agency may furnish a consumer report for employment purposes ***only if*** –
>
> (A) the person who obtains such report from the agency certifies to the agency that –
>
> (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable.

15 U.S.C. § 1681b(b)(1)(A)(i) (italics added).

23.     A CRA that furnishes consumer reports used for employment purposes without receiving the requisite certification of FCRA compliance from the person obtaining the report is furnishing the consumer report unlawfully. 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

24.     The paragraphs referenced in § 1681b(b)(1)(A)(i) are the stand alone disclosure, written authorization and pre-adverse action notification requirements set forth in § 1681b(b)(2) and § 1681b(b)(3).

25.     Crimcheck furnished consumer reports to Peoplease with knowledge Peoplease's employer/clients, not Peoplease, used such consumer reports for employment purposes. However, Crimcheck furnished the consumer reports, without requiring Peoplease's clients, who were actually obtaining and using the consumer reports, to certify compliance with 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

26.     Crimcheck furnished consumer reports to Peoplease, with knowledge Peoplease's employer/clients, not Peoplease used such consumer reports for employment purposes. However, Crimcheck furnished the consumer reports to Peoplease without requiring Peoplease to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

27.     Crimcheck similarly furnished consumer reports to other employers who were obtaining and using the consumer reports for employment purposes, without requiring them to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

28.     Crimcheck also issued applicants' consumer reports to Peoplease, despite having knowledge the consumer had not expressly authorized Peoplease to obtain their consumer report as required by § 1681b(b)(2).

29.     The purpose of the certification requirement is to ensure users of consumer reports for employment purposes follow the statutory framework Congress created to safeguard consumers' rights to privacy and information.

30.     It is flatly illegal for a consumer reporting agency to furnish a consumer report for employment purposes unless the consumer reporting agency has received the FCRA-mandated

certification of compliance from the user.  In fact, compliance with the certification requirement provides the *only* lawful means for a consumer reporting agency to furnish a consumer report for employment purposes.  15 U.S.C. § 1681b(b)(1)(A).

31.     Consistent with the purpose of the FCRA, it is flatly illegal for a consumer reporting agency to furnish a consumer report for employment purposes to a person it has knowledge has not been authorized by the consumer, in writing, to receive their consumer report, *i.e.*, not in accordance with the consumer's written instructions. 15 U.S.C. § 1681b(a)(2).

## ALLEGATIONS SPECIFIC TO PLAINTIFF

32.     MLS was an employer-client of Peoplease but made its own hiring and firing decisions.

33.     As part of its hiring process, MLS required that Plaintiff and other applicants electronically sign a document titled "*Disclosure of background check to be conducted on you*," ("MLS Disclosure") purportedly disclosing MLS intended to procure his consumer report for employment purposes.

34.     The MLS Disclosure did not disclose Peoplease or any other third party might be procuring the recipient's consumer report.

35.     MLS also required Plaintiff and other applicants to electronically sign a document titled "*Acknowledgement and Authorization of Background Check*" ("MLS Authorization") purportedly authorizing Managed Labor Solutions to obtain their consumer report.

36.     The MLS Authorization did not include authorization for any person other than MLS to obtain the signor's consumer report.

37.     In September, 2019 and October, 2020, after providing Plaintiff the MLS Disclosure and MLS Authorization, MLS procured Plaintiff's consumer reports from Crimcheck.

38.     In both instances, Peoplease also procured Plaintiff's consumer report.  In both instances, Crimcheck issued Plaintiff's consumer reports to Peoplease.  However, Plaintiff had never authorized Peoplease, LLC to obtain his consumer report.

39.     Had Plaintiff known that MLS, Peoplease and Crimcheck would violate the law in obtaining and using his background check, he never would have signed the authorization document.

40.     Had Plaintiff known that Crimcheck would release his consumer report to Peoplease without his authorization, he never would have signed the authorization document.

41.     In September, 2019 and October, 2020, MLS procured Plaintiff's consumer report from Crimcheck.  However, MLS never certified compliance with 15 U.S.C. § 1681b(b)(2)(A) or § 1681b(b)(3) before obtaining the consumer report from Crimcheck.

42.     In September, 2019 and October, 2020, Peoplease procured Plaintiff's consumer report from Crimcheck.  However, Peoplease never certified compliance with 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) before obtaining the consumer reports from Crimcheck.

43.     Crimcheck had knowledge Plaintiff did not authorize Peoplease to obtain his consumer reports because the MLS Authorization submitted through Crimcheck's online portal, authorized MLS *only* to obtain Plaintiff's consumer report.

44.     Crimcheck had knowledge Peoplease did not disclose to Plaintiff it intended to obtain his consumer report because the MLS Disclosure provided to Plaintiff and submitted through Crimcheck's website, disclosed MLS *only* intended to obtain Plaintiff's consumer reports.

45.     Crimcheck did not obtain MLS's certification of compliance it would comply with 15 U.S.C. § 1681b(b)(3), if applicable, before it released Plaintiff's consumer reports to MLS.

46.     Crimcheck did not obtain Peoplease's certification of compliance it would comply with 15 U.S.C. § 1681b(b)(3), if applicable, before it released Plaintiff's consumer reports to Peoplease.

47.     Crimcheck furnished the consumer reports to Peoplease even though Peoplease had never certified compliance with 15 U.S.C. § 1681b(b)(2)(A) before obtaining the report or that it would comply with § 1681b(b)(3), if ever applicable.

48.     Despite having none of the requisite certifications of FCRA compliance, Crimcheck still furnished Peoplease and MLS with thousands of consumer reports.

49.     Moreover, Peoplease could not have possibly certified compliance with §§ 1681b(b)(2)(A)(i)-(ii) because the purported disclosures and authorizations were *only* for MLS.

50.     MLS obtained Plaintiff's consumer reports from Crimcheck and used the reports for employment purposes.

51.     Peoplease obtained Plaintiff's consumer reports from Crimcheck without first providing Plaintiff a disclosure or obtaining his written authorization, most likely because Crimcheck failed to require it to certify same as a condition for receipt of Plaintiff's consumer reports.

52.     Plaintiff re-applied for employment with MLS in October 2020, but was rejected in whole or in part, because of his consumer report.  However, Plaintiff was never provided pre-adverse action notification pursuant to § 1681b(b)(3), most likely because MLS never certified to

Crimcheck it would provide such notification, if applicable, before obtaining Plaintiff's consumer report.

53.    Plaintiff was terminated and subsequently denied employment, in whole or in part, based on his consumer reports, but never provided proper notice or copies of his consumer reports.

54.    In September, 2019 and October, 2020, Crimcheck furnished Plaintiff's consumer reports to Peoplease without Plaintiff's authorization.

55.    Crimcheck disseminated and published Plaintiff's consumer reports to Peoplease without his written authorization.

56.    Crimcheck disseminated and published Plaintiff's consumer reports in direct contravention of Plaintiff's written instruction contained in the MLS Authorization, authorizing only MLS to obtain Plaintiff's consumer report.

## PLAINTIFF'S CONCRETE HARM

57.    Crimcheck unjustly enriched itself by unlawfully compiling Plaintiff's personal, private and sensitive information and selling it without a permissible purpose.  The injury of "unjust enrichment" has its roots in English common law.  Causes of action for unjust enrichment were part of "the traditional concern of the Courts at Westminster."  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 US 765, 774 (2000)(quoting *Coleman v. Miller*, 307 U.S. 433, 460 (1939)).

58.    Crimcheck violated Plaintiff's right to privacy by compiling his personal, private and sensitive information into a consumer report and furnishing it to a third party, MLS, without a permissible purpose, since Crimcheck did not have the requisite certifications from MLS.

59.     Crimcheck violated Plaintiff's right to privacy by compiling his personal, private and sensitive information into a consumer report and furnishing it to a third party, Peoplease, without a permissible purpose, since Crimcheck did not have the requisite certifications from Peoplease.

60.     Crimcheck violated Plaintiff's right to privacy by compiling his personal, private and sensitive information into a consumer report and publishing it to Peoplease, who Plaintiff did not authorize to receive his consumer report.

61.     Crimcheck intruded upon Plaintiff's seclusion by compiling his personal, private and sensitive information into a consumer report and publishing it to Peoplease, who Plaintiff did not authorize to receive his consumer report.

62.     The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural.  The violation alleged here is not some mere technical requirement—without the certification from MLS, Crimcheck had no statutory permission to furnish MLS with a report about Plaintiff.

63.     The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural.  The violation alleged here is not some mere technical requirement—without the certification from Peoplease, Crimcheck had no statutory permission to furnish Peoplease with a report about Plaintiff.

64.     This improper issuance of a report harmed Plaintiff by invading his privacy—Defendant released Plaintiff's private, personal information to MLS without a lawful reason for doing so.

65.     This improper issuance of a report harmed Plaintiff by invading his privacy—Defendant released Plaintiff's private, personal information to Peoplease without a lawful reason for doing so.

66.     This improper issuance of a report harmed Plaintiff by intruding upon his seclusion—Defendant released Plaintiff's private, personal information to Peoplease without his authorization.

67.     Crimcheck deprived Plaintiff of his personal right to control the use and publication of his personal, private and sensitive information.

68.     Protection of consumer privacy is one well-recognized aspect of the FCRA, and the statutory provisions violated here have been part of the FCRA since its enactment in 1970.

69.     Plaintiff and the putative class members have a common-law right to keep their personal information from being published, accessed and used without their knowledge or not in accordance with their instructions.  Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumeroriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other."  Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and Congress' finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

70.     Crimcheck invaded Plaintiff's and the putative class members' right to privacy when it provided their highly confidential personal information without a statutory basis for doing so.

71.     Crimcheck's failure to obtain the appropriate certifications from MLS injured Plaintiff in that (1) his privacy was unlawfully invaded by Crimcheck's provision of background

reports about him without statutory permission; (2) Plaintiff was deprived of his ability to contest or discuss with MLS the contents of his consumer report because Defendant did not obtain the proper certification from MLS that it would provide the appropriate notice to Plaintiff if MLS chose to use the contents of his consumer report as a basis to deny employment; and (3) Defendant was unjustly enriched by selling Plaintiff's consumer report to MLS when Defendant had no statutory basis on which to release those reports to MLS.

72.     Crimcheck's failure to obtain the appropriate certifications from Peoplease injured Plaintiff in that (1) his privacy was unlawfully invaded by Crimcheck's provision of background reports about him; (2) his personal, private and sensitive information was published to a person he did not authorize to receive it; and (3) his personal, private and sensitive information was released to a person without a permissible purpose to receive it.  Defendant was unjustly enriched by selling Plaintiff's consumer report to Peoplease when Defendant had no statutory basis on which to release those reports to Peoplease.

73.     If Crimcheck had required Peoplease to certify the permissible purpose of its use, that it had provided Plaintiff a written disclosure and obtained Plaintiff's authorization to procure the consumer report, and future compliance with § 1681b(b)(3), if applicable, Peoplease would not have been able to provide the requiste certification and therefore would never have received Plaintiff's consumer report.

74.     The conduct that Defendant engaged in is precisely the type that Congress sought to prevent—protection of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information.

75.     Plaintiff and the putative class members therefore suffered a concrete, in-fact injury that is directly traceable to Crimcheck's conduct and that is likely to be redressed by a

favorable decision here.

76.     MLS denied Plaintiff employment based in whole or in part, on the contents of his consumer report, which Defendant provided to MLS without a statutory basis for doing so. However, MLS never provided Plaintiff with pre-adverse action notice, a copy of his consumer report or summary of rights.  Again, it is not surprising MLS failed to satisfy the requirements of § 1681b(b)(3) since MLS never certified to Crimcheck that it would comply with § 1681b(b)(3) before obtaining Plaintiff's consumer report.

77.     If Plaintiff had known Crimcheck was furnishing his consumer report to MLS without a legal right to do so, *i.e.*, without requiring certification, Plaintiff would not have permitted Crimcheck to furnish his consumer report to MLS.

78.     If Plaintiff had known that Crimcheck was not furnishing his consumer report in accordance with his written instructions at the time he executed the MLS Authorization, Plaintiff would not have signed the authorization document.

79.     If Plaintiff had known Crimcheck was furnishing his consumer report to MLS without a legal right to do so, and such a consumer report would be the basis for his rejection, Plaintiff would not have permitted Crimcheck to furnish his consumer report to MLS.

80.     If Plaintiff knew Crimcheck was profiting unlawfully from his consumer report, Plaintiff would not have authorized Crimcheck to compile his personal, private and sensitive information for sale.

81.     If Plaintiff had known Crimcheck was furnishing his consumer report to Peoplease without a legal right to do so, and such a consumer report would be the basis for his rejection, Plaintiff would not have permitted Crimcheck to furnish his consumer report to Peoplease.

## DEFENDANT ACTED WILLFULLY

82.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

83.     Defendant obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

84.     Before CRAs provide consumer reports for employment purposes, they must obtain a written certification that the recipient has, (a) provided the consumer with an FCRA-compliant disclosure that a report will be sought; and (b) received that consumer's written authorization.

85.     This requirement has been part of the fabric of the FCRA since Congress enacted it. Defendant has had decades by which to become compliant with this requirement, yet it has not done so.

86.     The FCRA unambiguously prohibits CRAs from furnishing consumer reports that are not in accordance with the consumer's written instructions. No interpretation of the specific statutory provision, § 1681b(A)(2), and the MLS Authorization, authorized Crimcheck to furnish Plaintiff's consumer report to Peoplease. Any interpretation to the contrary would be reckless and objectively unreasonable.

87.     Discovery will show that Defendant has no process or procedure directed to compliance with the certification requirement, despite knowing of its existence.

88.     Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

89.     As a result of these FCRA violations, Defendant is liable to Plaintiff and to each member of the putative classes for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

90.     In Count I, Plaintiff asserts a claim against Crimcheck on behalf of a "Certification Class" defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Crimcheck that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this complaint through the date of final judgment in this action.**

91.     Plaintiff asserts a claim against Crimcheck on behalf of a "§ 1681b(A)(2) Class" consisting of:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Crimcheck that was not provided in accordance with the employee's or applicant's written insructions within five years of the filing of this complaint through the date of final judgment in this action.**

92.     Numerosity:    The members of the putative classes are so numerous that joinder of all class members is impracticable.   Upon information and belief, Crimcheck furnished thosuands of consumer reports to Peoplease and MLS alone.   Crimcheck regularly compiles consumers' personal, private and sensitive information into consumer reports for sale to employers.   Plaintiff is informed and believes that during the relevant time period, tens of

thousands of employees and prospective employees, if not hundreds of thousands, satisfy the definitions of the putative classes.  Based on the number of putative class members, joinder is impracticable.   The names and addresses of the class members are identifiable through Crimcheck's records and published class members may be notified of this action by mailed notice.

93.    <u>Typicality</u>:  Plaintiff's claims are typical of those of the members of the putative classes. Crimcheck typically furnishes consumer reports for employment purposes to employers. The FCRA violations suffered by Plaintiff are typical of those suffered by other putative class members because absent the requisite certifications, or in direct contravention of Plaintiff's instructions, Crimcheck did not have a permissible purpose to furnish the consumer reports.

94.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

95.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes.  These common questions include, but are not limited to:

> a.  whether Defendant furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2), before furnishing such reports;
>
> b.  whether Defendant furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(3), if applicable;
>
> c.  whether Defendant furnished consumper reports not in accordance with the written instructions of the consumer;

     d.  whether Defendant's violation of the FCRA was willful;

     e.  the proper measure of statutory damages; and

     f.  the proper form of relief.

96.    This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Crimcheck.  Further, adjudication of each individual class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

97.    This case is also maintainable as a class action because Crimcheck acted or refused to act on grounds that apply generally to the putative classes.

98.    Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Crimcheck's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the putative classes do not have an interest in pursuing separate actions against Crimcheck as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Crimcheck.  Moreover, management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

<u>COUNT I</u>
**<u>Failure to Obtain Certification Prior to Furnishing a</u>**
**<u>Consumer Report for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(1)(A)</u>**

99.     Plaintiff restates the allegations set forth in Paragraphs 32-81 as if fully set forth herein.

100.     Crimcheck willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided consumer reports about Plaintiff, which were used for employment purposes, without the user's or recipient's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

101.     Crimcheck invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer reports without a permissible purpose because it did not have the user's certification.

102.     Crimcheck caused Plaintiff injury because the reports Crimcheck furnished were used, in whole or in part, as the basis for an adverse employment action.

103.     Crimcheck caused Plaintiff injury because Crimcheck permitted the user of their consumer reports to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes by failing to require MLS or Peoplease to certify compliance therewith.

104.     Crimcheck caused Plaintiff injury because it provided his consumer report to a user or recipient who he had not authorized to receive it.

105.     The forgoing violations were willful.  At the time Crimcheck violated 15 U.S.C. § 1681b(b)(1)(A), Crimcheck knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) from MLS before furnishing MLS with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if

applicable. Crimcheck's willful conduct is also reflected by, among other things, the following facts:

    a.  Crimcheck knew of potential FCRA liability;

    b.  Crimcheck is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    c.  The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

    d.  Crimcheck knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

    e.  Crimcheck voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

106.    Plaintiff and the "Certification Class" are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

107.    Plaintiff and the "Certification Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative "Certification Class" pray for relief as follows:

    a.  determining that this action may proceed as a class action;

b.  designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.  issuing proper notice to the putative class at Crimcheck's expense;

d.  finding that Crimcheck committed multiple, separate violations of the FCRA;

e.  finding that Crimcheck acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.  awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g.  awarding reasonable attorneys' fees and costs as provided by the FCRA.

<u>**COUNT II**</u>
**Failing to Provide Consumer Reports in**
**Accordance with the Written Instructions of the Consumer**
**to Whom it Relates in Violation of 15 U.S.C. § 1681b(A)(2)**

108.  Plaintiff restates the allegations set forth in Paragraphs 32-81 as if fully set forth herein.

109.  Crimcheck violated 15 U.S.C. § 1681b(A)(2) because it failed to provide consumer reports about Plaintiff in accordance with his written instructions when it provided his consumer reports to Peoplease.

110.  Crimcheck invaded Plaintiff's privacy by publishing his consumer report to Peoplease with knowledge Plaintiff did not authorize Peoplease to obtain his consumer report, causing Plaintiff injury.

111.    Crimcheck intruded upon Plaintiff's seclusion by publishing his consumer report to Peoplease with knowledge Plaintiff did not authorize Peoplease to obtain his consumer report, causing Plaintiff injury.

112.    The forgoing violations were willful.  At the time Crimcheck violated 15 U.S.C. § b(A)(2), Crimcheck knew Plaintiff did not authorize Peoplease to obtain his consumer report. Crimcheck's willful conduct is also reflected by, among other things, the following facts:

   a.   Crimcheck knew of potential FCRA liability;

   b.   Crimcheck is a consumer reporting agency with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

   c.   The FCRA's requirement that consumer reports only be furnished in accordance with the consumer's written instructions is clearly spelled out in the plain language of the statute;

   d.   Crimcheck knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

   e.   Crimcheck voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

113.    Plaintiff and the ""§ 1681b(A)(2) Class" are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each

and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

114.    Plaintiff and the "§ 1681b(A)(2) Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative "§ 1681b(A)(2) Class" pray for relief as follows:

a.   determining that this action may proceed as a class action;

b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.   issuing proper notice to the putative class at Crimcheck's expense;

d.   finding that Crimcheck committed multiple, separate violations of the FCRA;

e.   finding that Crimcheck acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## JURY DEMAND

Plaintiff and the putative class demand a trial by jury.

Dated this 3rd day of May, 2021.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone 813-223-5505
Fax: 813-257-0572
MEdelman@forthepeople.com
*Attorney for Plaintiff*